# IN THE MATTER OF THE APPLICATION OF DAVID S. FERGUSON, Petitioner–Appellant, FOR A WRIT OF QUO WARRANTO AGAINST DOUGLAS IGE WHO ACTS AS A JUDGE IN DISTRICT COURT

## NO. 16073

(S. P. NO. 92–0030)

MARCH 1, 1993

MOON, ACTING C.J., KLEIN, LEVINSON, JJ., CIRCUIT COURT JUDGE CRANDALL, IN PLACE OF LUM, C.J., RECUSED, AND CIRCUIT COURT JUDGE WATANABE, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KLEIN, J.

This appeal stems from an order issued by the Circuit Court of the Second Circuit dismissing with prejudice appellant's petition for *quo warranto*. The petition had challenged per diem judge Douglas Ige to show by what authority he held his appointed office.

## I. FACTS

David Ferguson (appellant) filed a petition for *quo warranto* alleging that per diem judge Douglas Ige's (appellee) private law practice contravened article VI, section 3 of the Hawaii Constitution. Appellant recognized that Hawaii Revised Statutes (HRS) § 604–2 (1985)[1] specifically allows per diem judges to practice law, but argued that the statute violates the clear constitutional proscription that "[n]o justice or judge shall, during the term of office, engage in the practice of law . . . ."[2] The circuit court

---

[1] HRS § 604–2 provides in pertinent part:

The chief justice shall appoint district judges to serve on per diem basis and as may be necessary to provide auxiliary judicial functions in the several districts of the State. Such per diem district judges may engage in the private practice of law during their term of service. Such judges shall receive per diem compensation for the days on which actual service is rendered based on the monthly rate of compensation paid to a district court judge.

[2] Article VI, section 3 of the Hawaii Constitution provides in pertinent part:

issued an order (writ of *quo warranto*) directing appellee to appear and show by what warrant and authority he claimed his office.

At the hearing, appellee submitted properly authenticated copies of his Order of Reappointment and Oath of Office, and also cited to article VI, section 3 of the Hawaii Constitution ("The chief justice shall appoint per diem district court judges as provided by law") and HRS § 604–2 ("[P]er diem district judges may engage in the private practice of law during their term of service") as proof of his authority to hold the office of per diem judge and to simultaneously engage in the practice of law. Appellee questioned appellant's standing to bring the action and

---

### APPOINTMENT OF JUSTICES AND JUDGES

SECTION 3. . . .

The chief justice shall fill a vacancy in the district courts by appointing a person from a list of not less than six nominees for the vacancy presented by the judicial commission. If the chief justice fails to make the appointment within thirty days of presentation, the appointment shall be made by the judicial selection commission from the list. *The chief justice shall appoint per diem district court judges as provided by law.*

### QUALIFICATIONS FOR APPOINTMENT

Justices and judges shall be residents and citizens of the State and of the United States, and licensed to practice law by the supreme court. A justice of the supreme court, a judge of the intermediate appellate court and a judge of the circuit court shall have been so licensed for a period of not less than ten years preceding nomination. A judge of the district court shall have been so licensed for a period of not less than five years preceding nomination.

*No justice or judge shall, during the term of office, engage in the practice of law*, or run for or hold any other office or position of profit under the United States, the State or its political subdivisions.

(Emphasis added.)

his failure to join all indispensable parties. Appellee asserted, moreover, that the constitutionality of a statute such as HRS § 604–2 is not at issue in a proceeding in the nature of *quo warranto*. Instead, appellee maintained that an action for declaratory relief testing the constitutionality of the statute would have been the appropriate proceeding.

The circuit court ruled that both the relevant statute and appellee's appointment complied with article VI, section 3 of the Hawaii Constitution. Appellant only addressed the standing issue at the hearing below, but the issue of who may have been indispensable parties was not raised by either side during the hearing.[3] For the reasons set forth below, we agree with the circuit court that appellee is authorized to hold office. Accordingly, we affirm the circuit court's order dismissing appellant's petition for *quo warranto* with prejudice.

## II. DISCUSSION
### A. Standing

Interested individuals have standing to petition for writs of *quo warranto* pursuant to HRS § 659–4 (1985), which provides:

---

[3] The *issue* of indispensable parties was raised in appellee's answer to the petition. However, no motion to dismiss was filed nor was there any indication given at the hearing as to who might have been an indispensable party. That the chief justice may be an indispensable party was first raised in appellee's answering brief. Although we recognize that " '[a]bsence of indispensable parties can be raised at any time even by a reviewing court on its own motion[,]' " *Haiku Plantations Ass'n v. Lono*, 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) (quoting *Filipino Fed'n of America v. Cubico*, 46 Haw. 353, 369, 380 P.2d 488, 497 (1963)), we need not address this issue in light of today's ruling.

> The order is obtained by petition addressed to a circuit court, setting out facts sufficient to show a right to the order, and sworn to if the application is made *by a private individual*, or is made by the attorney general as provided by section 659–6.

(Emphasis added.) Residents, taxpayers, and registered voters are interested persons and thus entitled, subject to the discretion of the court reviewing the petition, to bring actions in the nature of *quo warranto* against incumbent public officials. *In re Sherretz*, 39 Haw. 431, 439 (1952) ("[R]esidents, registered voters and taxpayers . . . are proper parties to apply by petition for a writ of quo warranto to try title of an incumbent in public office."); *In re Sherwood*, 22 Haw. 385, 388 (1914); *accord Highsmith v. Clark*, 245 Ga. 158, 159, 264 S.E.2d 1, 1 (1980) ("[A]ny citizen and taxpayer of a community may challenge the qualifications of a public official to hold office in that community."). Appellant's petition sufficiently states that he is a resident, taxpayer, and qualified voter of Maui County, thus establishing his standing to bring the present petition.

## B. **Burden of Proof**

A petition for a writ of *quo warranto* seeks a court order directing a person who claims or usurps a state office to show by what authority he or she claims the office. HRS § 659–1 (1985). The burden rests with the respondent once the writ is issued.

> The proceeding is not the ancient writ of *quo warranto*, but a statutory proceeding in the nature of *quo warranto*. The petition must state facts sufficient to show that the petitioner is entitled to the writ or order. The writ or order need not recite the

facts showing that the petitioner is entitled to it, and is in the nature of a summons commanding the respondent to show by what authority he claims to hold the office, and, in effect, is an order to show cause.

*In re Sherwood*, 22 Haw. at 389.

Although the purpose of the petition is not to challenge existing laws, proceedings in the nature of *quo warranto* are appropriate for interpreting or inquiring into the validity of statutes if raised in support of a respondent's authority to hold office. *Territory v. Morita*, 41 Haw. 1, 7 (1955) (court examining legislative intent to determine meaning of statute relating to *quo warranto* proceedings against holdover appointees); *State ex rel. Madden v. Crawford*, 207 Or. 76, 295 P.2d 174 (1956) (court held that statute allowing appointment of temporary supreme court justice was contrary to constitutional provision directing that such justices be elected by legal voters of state at large). Once an existing statute is set forth as justification for the office, the burden shifts back to the petitioner to prove the unconstitutionality of the statute "beyond a reasonable doubt." *State v. Kam*, 69 Haw. 483, 496, 748 P.2d 372, 380 (1988); *City & County v. Ariyoshi*, 67 Haw. 412, 419, 689 P.2d 757, 763 (1984); *cf. State v. Kantner*, 53 Haw. 327, 332, 493 P.2d 306, 309, *cert. denied*, 409 U.S. 948, 93 S. Ct. 287, 34 L. Ed. 2d 218 (1972) (party attacking statute must show with "convincing clarity" that statute is unconstitutional). The burden shifts because the legislature is presumed to have enacted valid statutes in harmony with all constitutional provisions. *State ex rel. Amemiya v. Anderson*, 56 Haw. 566, 574–75, 545 P.2d 1175, 1181 (1976) (" 'When a constitutional question is properly presented, it is the duty of the

court to ascertain and declare the intent of the framers of the Constitution and to reject any legislative act which is in conflict therewith. . . . The presumption, however, is in favor of constitutionality, and all doubts must be resolved in favor of the act.' ") (quoting *Mitchell v. North Carolina Indus. Dev. Fin. Auth.*, 273 N.C. 137, 144, 159 S.E.2d 745, 750 (1968)). Because, for the reasons set forth below, appellant has not met his burden, we agree with the circuit court and hold that HRS § 604–2 is constitutional.

## C. **Full–time and Part–time Judges**

### 1. **Constitutional history**

Our examination of the history of article VI, section 3 reveals that the 1978 Constitutional Convention intended by implication that the restrictive provision relating to the practice of law apply only to *full–time* justices and judges, thereby excluding per diem judges from its proscription.

Article VI, section 3 of the Hawaii Constitution provides in relevant part:

> No justice or judge shall, during the term of office, engage in the practice of law, or run for or hold any other office or position of profit under the United States, the State or its political subdivisions.

The prohibition regarding the private practice of law was added by the 1978 Constitutional Convention, while the latter restriction addressing public offices was added to the constitution by the 1950 Constitutional Convention.[4] Although statutes governing the private practice of

---

[4] Until 1970, persons presiding in the district courts were *"magistrates."* *See, infra,* note 9 and accompanying text. Thus, the 1950 amendment, that refers to "justice or judge," would not have applied to

law by judges existed in 1950, an attempt was made at the 1950 Constitutional Convention to amend the constitution to add similar restrictions prohibiting the *private* practice of law. *See* II Proceedings of the Constitutional Convention of Hawaii of 1950, at 371. Because the convention delegates were reluctant to overload the constitution with excessive judicial qualifications, the attempt was unsuccessful. *Id.* Convention delegates were successful, however, in inserting the private practice restrictions at the 1978 Constitutional Convention.

Convention records reveal that the 1978 Constitutional Convention delegates intended article VI, section 3 to be comprehensive; they inserted the prohibitions on the private practice of law to complement the restrictions concerning "for profit" public office:

> Finally, your Committee recommends the addition of prohibitions which would forbid a judge from engaging in the practice of law *or* holding any other office of profit under the United States, the State or any of its political subdivisions while in judicial service. It is the intent of your Committee to eliminate any possibility of conflict of interest that might arise through either *the private or the public sector*.

Stand. Comm. Rep. No. 52, I *Proceedings of the Constitutional Convention of Hawaii of 1978*, at 622 (1980) (*1978 Proceedings*) (emphasis added). Missing from the record are any indications that the Convention delegates

___

the full– or part–time district *magistrates*. Nevertheless, inapplicability of this provision would not have precluded the legislature from prohibiting various public officers from holding district magistrate positions. *See e.g.*, HRS § 601–5 (1975 and 1985), relating to the independence of the judiciary.

intended to apply article VI, section 3's private law practice restrictions to per diem judges. Significant practical concerns exist that would have warranted comment by the 1978 convention delegates had they so intended. First, the elimination of practicing attorneys from the available pool of potential per diem judges would dramatically reduce the number of attorneys available for per diem judgeships.[5] The resulting pool would of necessity be restricted to retired attorneys of less than the mandatory retirement age or those licensed attorneys in fields other than legal practice. We question whether a sufficient number of retired attorneys would be willing to serve as per diem judges, and limiting per diem judgeships to attorneys working in a field other than law would foreseeably diminish the skills and knowledge necessary to effectively handle judicial responsibilities.[6] Second, a per diem judgeship may provide younger attorneys with the background needed to decide whether to pursue a judicial career — a goal sought to be encouraged by the convention delegates. *1978 Proceedings*, at 622. Third, because the practice of law affords a degree of financial security not derived from intermittent per diem

---

[5] In January, 1978, there were thirteen per diem judges, all in the first circuit; currently, forty–three per diem judges assist in all four judicial circuits. Both in 1978 and the present, approximately ninety percent of the per diem judges engage in the private practice of law.

[6] The convention standing committee stated in report No. 52 that "[y]our Committee feels that the minimum *practice* [five years for district court judges] requirement is necessary to ensure that justices and judges are sufficiently knowledgeable and experienced to carry out the laws of this State fairly and efficiently." *1978 Proceedings*, at 622 (emphasis added). Although the constitution speaks only of being "licensed to practice," the delegates clearly considered the *actual* practice of law to be an important component.

judicial activity, it is important that the system permit per diem judges to conduct law practices. Finally, all of these practical concerns occur against the backdrop of a 100–year–old understanding that per diem judges are allowed to practice law.[7] The 1978 Convention delegates' failure to comment on these significant issues when they amended article VI, section 3 of the Hawaii Constitution demonstrates to us that the restriction was never intended to apply to per diem judges.

To interpret the proscriptions of article VI, section 3 as applicable to per diem judges would be to assume that the convention delegates intended to render unconstitutional HRS §§ 601–8 and 604–2 (1975), ignore the historical practice of law by per diem judges, and frustrate the goals of an efficient court system. Constitutional provisions, like statutory ones, must be given a reading that harmonizes the purposes of one with that of another. Because no comment to the contrary exists, an interpretation that excludes per diem judges from the scope of article VI, section 3's proscription against the practice of law is most in harmony with the overall goals of the article VI amendments and with the historical understanding that per diem judges exist as a category separate from full–time "justices and judges."[8]

---

[7] *See* The Compiled Laws of the Hawaiian Kingdom § 821 (1884).

[8] In addition, the unique role per diem judges play in the administration of justice is not limited to a recognition of their right to practice law, but is further made evident by the exemption accorded them from the Judicial Selection Commission's nominating procedures:

> Your Committee does not intend that the selection of per diem district court judges be made through the judicial selection commission process. These judges are part–time and serve on an as–needed basis depending on the district court workload and the availability of full–time district judges. Because per diem district

## 2. Statutory history

Statutory history further reinforces such an interpretation of the constitution; a dichotomy has always existed between full–time judges who were barred from the private practice of law and part–time judges who were not subject to the same restrictions. Prior to the 1970 reorganization of the court system, supreme court *justices* and circuit court *judges* were precluded from practicing law. HRS § 601–8 (1968) provided:

> No justice of the supreme court, nor any circuit judge, shall exercise the profession or employment of counsel or attorney at law, or be engaged in the practice of law.

Part–time district magistrates were paid less than full–time magistrates and only *full–time magistrates* were prohibited from practicing law. *See, e.g.*, HRS §§ 608–3 to 608–7 (1968). In 1970, district courts were made courts of record and district magistrates were made "judges."[9] HRS § 601–8 was amended, in 1970, to provide:

---

judges are needed on short notice, your Committee believes that the chief justice should be left to appoint such judges. Therefore, your Committee provides that the chief justice will make per diem district court appointments in accordance with law.

*1978 Proceedings*, at 621. The delegates thus distinguished per diem judges from "justices and judges" in acknowledgment of their singular role in the efficient functioning of the court system.

[9] The Senate standing committee stated:

Furthermore, because the term "magistrate", owing to its historic connotation, imparts something less than the degree of stature which the reorganization sought to be accomplished by the enactment of *S.B. No. 603* [original emphasis] would otherwise attain, the district courts should be presided over by jurists bearing, instead, the title of "judge", who should have been an attorney

> Justices of the supreme court, judges of the circuit court, and *full–time judges of the district court* shall not engage in the practice of law during their term of office.

(Emphasis added.) In response to the 1978 constitutional amendments, the legislature again amended HRS § 601–8 in 1979 to prohibit the judges of the newly created Intermediate Court of Appeals from practicing law. Although the legislature was well aware of the recent constitutional amendments, it nevertheless amended HRS § 601–8 to reconfirm that the term "judge" in article I, section 3 of the Hawaii Constitution means *full–time* judge:

> **§601–8 Practice of law forbidden.** Justices of the supreme court, judges of the intermediate appellate court, judges of the circuit court, and *full–time judges of the district court and of the district family court* shall not engage in the practice of law during their terms of office.

(Emphasis added.)

The Code of Judicial Conduct also distinguishes between full– and part–time judges. *See* Canon 4G and Application of the Code of Judicial Conduct, Revised Code of Judicial Conduct (Sept. 9, 1992).[10]

---

licensed to practice in all the courts of the state for at least five years; that all such district judges *should serve on a full–time basis only* . . . .

Sen. Stand. Comm. Rep. No. 762–70, in 1970 Senate Journal, at 1344 (emphasis added).

[10] Canon 4G of the Revised Code of Judicial Conduct states in pertinent part: "A judge shall not practice law." The Application of the Code of Judicial Conduct provides that "[a]ll judges shall comply with this Code except [that]:

> B. Continuing Part–time Judge. A continuing part–time judge:

Nothing contained either in the 1978 Constitutional Convention journals or in any subsequently enacted statutes or codes evidences an intent to invalidate the 100–year–old distinction between full–time and part–time judges. HRS § 604–2, the statute authorizing per diem judges to practice law, is not, therefore, in violation of the Hawaii Constitution's provision prohibiting *full–time* judges from practicing law during their term of office.

Finally, appellant expresses concern regarding a hypothetical situation in which an attorney could be arguing bitterly against another attorney one day, only to face his opponent as a judge the next. The problem is one of academic interest only because, in practice, per diem judges are expressly precluded from practicing law before the court they serve. *See supra* note 10, Revised Code of Judicial Conduct; *see also* Office of Disciplinary Counsel, Formal Opinions No. 25 (Dec. 20, 1979) and 27 (Jan. 11, 1983). Further, the codes of professional responsibility and judicial conduct direct judges to avoid even the appearance of impropriety. A per diem judge is precluded, therefore, from sitting on a case in a different court in which his or her impartiality might reasonably be

---

(1)   is not required to comply

    (a)   except while serving as a judge, with Section 3B(9) [Prohibition against public comment on pending proceedings]; and

    (b)   at any time with Sections 4C(2) [Appointments to governmental committees, commissions, or positions], 4D(3) [Business participation], 4E(1) [Fiduciary activities], 4F [Private arbitrator or mediator], *4G [Practice of law]*, 4H [Compensation, reimbursement, and reporting], 5A(1) and 5B [Inappropriate political activity].

(2)   shall not practice law in the court on which the judge serves.
(Emphasis added.)

questioned. Canons 1–5 of the Revised Code of Judicial Conduct (Sept. 9, 1992); *see generally* **Sussel v. City & County Civil Serv. Comm'n**, 71 Haw. 101, 108–09, 784 P.2d 867, 870–71 (1989). Sanctions for a transgression of this obligation would be severe.

Because appellee was properly appointed under a constitutionally–sound statute, and no assertions were made that appellee violated any of the terms of his appointment, we affirm the order of the circuit court.

On the briefs:

*David S. Ferguson* petitioner–appellant pro se.

*Celia L. Jacoby* (*Charlene Aina* with her on the brief), deputy attorneys general, for respondent–appellee.