Gerard DEMBOWSKI, Plaintiff,

v.

NEW JERSEY TRANSIT RAIL OPERATIONS, INC., Defendant.

No. Civ.A. 99–56(KSH).

United States District Court, D. New Jersey.

Sept. 12, 2002.

---

William H. Covert, Reitman Parsonnet, Newark, NJ, for plaintiff.

Esther E. Bakonyi, Atty. Gen. of New Jersey, Alex J. Keoskey, Office of Atty. Gen., Trenton, NJ, Anthony R. Mautone, Mautone, Horan & Redden, P.A., West Orange, NJ, for defendant.

Joseph Thomas Calabria, Clemente, Gesicki & O'Hara, Roseland, NJ, movant pro se.

## OPINION AND ORDER

HEDGES, United States Magistrate Judge.

### INTRODUCTION

Anthony R. Mautone ("Mautone") is a part-time United States magistrate judge sitting in the District of New Jersey. On March 18, 2002, Mautone was substituted in as counsel for defendant New Jersey Transit Rail Operation, Inc. Thereafter, plaintiff Gerard Dembowski made an informal application to disqualify Mautone. I denied that application pursuant to Order

filed on March 6, 2002. In doing so, I relied on the "Conflict–of–Interest Rules for Part-time Magistrate Judges."

Plaintiff has now made what he styles an "*in limine*" motion to have the trial of this civil action transferred out of the District of New Jersey or, in the alternative, to disqualify Mautone. The motion has been referred to me by Judge Hayden. I have considered the papers submitted in support of and in opposition to the motion.[1] There was no oral argument. Rule 78.

### DISCUSSION

*Basis for the Motion*

Plaintiff has a rather curious basis for his motion. Plaintiff "now concedes" that Mautone is authorized to sit as a part-time magistrate judge and to engage in the private practice of law in the District where he sits. Plaintiff then argues that, "this situation creates, at the very minimum, the appearance of gross impropriety." Paragraph 3, Motion. According to plaintiff, the trial judge may "subconsciously favor Mr. Mautone and make rulings that benefit he and his client." Paragraph 4, Motion. Plaintiff also argues that, if a juror somehow learns that Mautone is a part-time magistrate judge, "it is very possible that the juror will give undo [*sic*] and unwarranted credence to defendant's case, and to the credibility to [*sic*] its witnesses, because the defendant is represented by a member of the judiciary." Paragraph 5, Motion. Plaintiff concludes his argument with the following:

While *** it is conceded that Mr. Mautone is neither acting improperly or illegally because he is acting in accordance with federal statute, it is none the less, respectfully submitted that the

---

1. Pursuant to 28 U.S.C. § 2403(a), I gave notice to the Attorney General of plaintiff's constitutional challenge to 28 U.S.C. § 632(b). Thereafter, the Attorney General submitted a response to the motion.

statute permitting a part-time United States Judge to represent clients in the same judicial district where he serves a judicial function, is unconstitutional.

The Constitution of the United States, Amendments V and XIV, guarantee every citizen the due process of law. The courts of the United States have consistently held that this constitutes the right of citizens to have fundamentally fair and impartial judicial proceedings.

For the reasons set forth above, particularly the possibility of subconscious decisions favorable to the defendant and its counsel because of its counsel position as a member of the federal judiciary, and/or partiality of a juror for the defendant if it learns that it is being represented by a member of the federal judiciary, plaintiff cannot receive a fundamentally fair and impartial trial in the District of New Jersey so long as Mr. Mautone is representing the defendant. [Paragraphs 6–8, Motion].

*The Position of Part-time United States Magistrate Judge*

The Federal Magistrates Act, 28 U.S.C. § 631 *et seq.* ("the Act"), authorizes the creation of both full-time and part-time United States magistrate judges. The *Guide to Judiciary Policies and Procedures ("Guide ")*,[2] discusses the latter position in Volume III, Chapter X, Part C(3)(J), in pertinent part, as follows:

The Federal Magistrates Act states a preference for the creation and maintenance of a system of full-time magistrate judge positions. *See* 28 U.S.C. § 633(a)(3). Where there is insufficient judicial business to make a full-time magistrate judge position 'feasible or desirable' at given locations, the Act autho-

rizes the Judicial conference to establish part-time magistrate judge positions.

While the Federal Magistrates Act authorizes the district courts to assign a full range of duties to part-time magistrate judges, the work of most part-time magistrate judges is generally limited to: (1) the conduct of preliminary proceedings in criminal cases, such as the issuance of warrants and the conduct of initial appearances; and (2) the trial of petty offenses and other misdemeanors, particularly those arising on federally-administered lands, such as military installations and national parks and forests.

In determining whether, and to what extent, to assign duties under 28 U.S.C. §§ 636(b) and (c) to part-time magistrate judges, consideration should be given to: (1) the application of the pertinent conflict-of-interest rules for part-time magistrate judges; and (2) the amount of compensation which has been authorized by the Judicial Conference for the individual part-time magistrate judge positions in the district. A part-time magistrate judge who is assigned 'additional duties' under section 636(b) or who conducts civil consent trials under section 636(c) may not appear as counsel in any case, civil or criminal, in the district court for which the magistrate judge is appointed. In addition, the Federal Magistrates Act states that a part-time magistrate judge is authorized to try civil cases only if the chief judge of the district court certifies that no full-time magistrate judge is reasonably available in accordance with guidelines established by the judicial council for the circuit.

---

2. "The *Guide to Judiciary Policies and Procedures* is the official medium by which guidance and information is provided to the Judiciary in support of its day-to-day operations.

The *Guide* also codifies policies which are promulgated by the Director of the AO and approved by the Judicial Conference of the United States." *Guide,* Vol. I, Ch. I(A).

Consistent with the *Guide,* Mautone presides over criminal and quasi-criminal matters which occur on federal installations in the State of New Jersey. He normally sits at these installations. Mautone is not assigned any "additional duties" under Section 636(b) or (c).

The Act distinguishes between full-time and part-time magistrate judges in their "character of service." 28 U.S.C. § 632(b) provides:

(a) Full-time United States magistrates may not engage in the practice of law, and may not engage in any other business, occupation, or employment inconsistent with the expeditious, proper, and impartial performance of their duties as judicial officers.

(b) Part-time United States magistrates shall render such service as judicial officers as is required by law. While so serving they may engage in the practice of law, but may not serve as counsel in any criminal action in any court of the United States, nor act in any capacity that is, under such regulations as the conference may establish, inconsistent with the proper discharge of their office. Within such restrictions, they may engage in any other business, occupation, or employment which is not inconsistent with the expeditious, proper and impartial performance of their duties as judicial officers.

Consistent with Section 636(b), a part-time magistrate judge such as Mautone is permitted by statute to engage in the practice of law while full-time judicial officers are prohibited from doing so.

In recognition of the unique status of magistrate judges in the federal judicial system, the Judicial Conference has promulgated conflict of interest rules applicable to them:

1. A part-time magistrate judge, his or her partners and associates, may appear as counsel in any civil action in any court or governmental agency, including matters in which the United States is a party or has a direct and substantial interest, but they may not appear in cases in which the part-time magistrate judge has been involved in connection with his or her official duties.

2. A part-time magistrate judge, his or her partners and associates, may appear as counsel in any matter before the Internal Revenue Service, other than in those matters in which the part-time magistrate judge has been involved in connection with his or her official duties.

3. A part-time magistrate judge may appear as counsel in a criminal action in any state court, but is precluded from appearing as counsel in any criminal action in any court of the United States.

4. A part-time magistrate judge's partners and associates may appear as counsel in any criminal action in any state court and in any federal court other than in the district in which the part-time magistrate judge serves, provided that the part-time magistrate judge has not been involved in such criminal proceeding in connection with his or her official duties.

5. A part-time magistrate judge is precluded from using his or her official office to refer cases to his or her partners, associates, or to others.

6. Generally, a part-time magistrate judge represents conflicting interests who, in behalf of the Government, it is his or her official duty to take certain action or contend for that which duty to another would require him or her to oppose.

7. A part-time magistrate judge who is assigned additional duties under Section 636(b) or who conducts civil proceedings with the consent of the parties under Section 636(c) of Title 28, United States Code, may not appear as counsel in any case, civil or criminal, in the district

court for which he or she is appointed. This prohibition shall not extend to a part-time magistrate judge whose additional assignments are limited to the review of prisoner petitions, service as a special master in a specified case, the receipt of indictments returned by grand juries, or the conduct of arraignments. 8. A part-time judge may not use his or her official position in any way to promote his or her private law practice. In this regard, he or she may not use his or her official stationary in the conduce of his or her law practice nor include his or her official title on general office letterhead. [*Guide*, Vol. II, Ch. III(A)].

As noted above, Mautone has not been assigned additional duties under Section 636(b) and does not conduct "consent" proceedings under Section 636(c). Mautone's appearance as trial counsel for the defendant *sub judice* is consistent both with the Act and the conflict of interest rules of the Judicial Conference.[3] Recognizing these undisputed facts, plaintiff now mounts what is in effect a constitutional challenge to the statutory and "regulatory" scheme described above.

### The Question of Constitutionality

"There is a constitutional right to have a 'neutral and detached judge' preside over judicial proceedings. In addition, quite aside from the rights of the litigants, the purity of the judicial process and its institutions is at stake." 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3541 at 548–49 (2d ed.1984) (footnotes omitted). The United States Supreme Court, in *In re Murchison*, 349

U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), described this right in due process terms:

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law. *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11. [349 U.S. at 136, 75 S.Ct. 623 (footnote omitted)].

See *Kinnear–Weed Corp. v. Humble Oil & Refining Co.*, 403 F.2d 437, 439–40 (5th Cir.1968) (*en banc*) (disqualification of judge "is a matter which transcends the interests of the parties. The purity of the judicial process and its institutions is the thing at stake").[4]

---

3. In 1999, then-part-time Magistrate Judge Wigenton (*nee* Davis) asked our Board of Judges to "clarify her availability to appear as counsel in civil actions before the Court." At its June 16, 1999 Conference, the Board of Judges agreed "to adhere to the U.S. Judicial Conference's rule permitting part-time magistrate judges to appear as counsel." Amended

Minutes, June 16, 1999 Conference of the Board of Judges (on file of the Clerk of the Court).

4. I have found no federal case law directly on point with the question of law before me. Accordingly, I will apply the principles set forth in *Murchison*. I should also note that

Plaintiff's argument in support of his unconstitutional claim advances along two fronts. First, plaintiff argues that the trial judge is a "colleague" of Mautone and may be "subconsciously" influenced by this "collegiality" to rule in Mautone's favor. Second, plaintiff argues that a juror who learns of Mautone's part-time position may become biased in favor of Mautone's witnesses and client. These arguments should be addressed separately.

■ As a preliminary matter, "[f]ederal statutes are presumed constitutional." *Koslow v. Commonwealth of Pennsylvania*, 2002 WL 1925569, at *9, 2002 U.S.App. LEXIS 17279, at *30–31, No. 01–2782, slip op. at 19 (3d Cir. Aug.21, 2002); *see Rostker v. Goldberg*, 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) ("Whenever called upon to judge the constitutionality of an Act of Congress ... the Court accords 'great weight to the decisions of Congress' "). Accordingly, Section 632(b) is entitled to a presumption of constitutionality.

■ It is also well-settled that "courts should decide only 'a real, substantial controversy,' not a mere hypothetical question." 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3532.2 at 137 (footnotes omitted). Moreover, a hypothetical concern of a due process violation that, as alleged here, stems from a judge's relationship or "familiarity

with defendants *** is not sufficient to disqualify a judge from presiding in a case." *United States v. Edwards*, 39 F.Supp.2d 692, 699 (M.D.La.1999) (denying motion for recusal where judge's son was associate in law firm representing co-defendant).

■ Plaintiff's hypothetical and speculative concerns are insufficient to sustain a constitutional challenge based on either of the two arguments identified above.[5] In any event, any legitimate concerns of plaintiff may be addressed in nonconstitutional terms. *Cf. Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (recounting "rules" under which the Supreme Court "has avoided passing upon a large part of all the constitutional questions pressed upon it for decision").

### The Concern About the Trial Judge

The "Code of Conduct of United States Judges" applies to all federal judicial officers. The Code was first adopted by the Judicial Conference on April 5, 1973 and was last revised at the September, 1999 session of the Judicial Conference. Canon 1 of the Code provides that "a judge should uphold the integrity and independence of the judiciary." The Commentary to Canon 1 states,

(t)he Canons are rules of reason. They should be applied consistent with consti-

plaintiff been of no assistance in this regard, having cited no case law in his motion papers.

5. In the face of similar challenges, several state supreme courts have upheld the validity of statutes that permit part-time judges to practice law. *See In re Application of Ferguson*, 74 Haw. 394, 401–08, 846 P.2d 894, 898–901 (Haw.1993) (statute authorizing *per diem* judges to engage in practice of law did not violate the State constitutional provision that prohibits any judge from engaging in the practice of law, as that provision only ap-

plied to full-time judges); *In re Public Law No. 305 etc.*, 263 Ind. 506, 530–31, 334 N.E.2d 659, 672–73 (Ind.1975) (judges appointed on an interim basis to handle cases previously handled by justices of the peace deemed temporary judges and entitled to continue to practice law, as set forth in the exception to Canon 7 of the Code of Judicial Conduct); *Regency Pheasant Run Ltd. v. Karem*, 860 S.W.2d 755, 757–58 (Ky.Sup.Ct. 1993) (State constitutional provision prohibiting judge from practicing law "during his term of office" held inapplicable to special judges *pro tempore* ).

tutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions. Canon 3 provides that "a judge should perform the duties of the office impartially and diligently." More specifically, Canon 3C(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judges' impartiality might reasonably be questioned ***." One such instance is when "the judge has a personal bias or prejudice concerning a party." Canon 3(C)(1)(a).

■ The Code sets forth standards of conduct for federal judicial officers. It also describes circumstances when federal judicial officers should disqualify themselves. Statutory disqualification standards for federal judicial officers are also set forth in Sections 144 and 455 of Title 28. When applicable, these sections are to be read together. *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

■ 28 U.S.C. § 455(b)(1) requires a judge to disqualify himself only when "he has a personal bias or prejudice concerning a party." Thus, "a judge's acquaintance with a party, an attorney, or a witness, without some factual allegation of bias or prejudice, is not sufficient to warrant recusal." *Bailey v. Broder,* 1997 WL 73717, at *3, 1997 U.S.Dist. LEXIS 1751, *9, (S.D.N.Y. Feb.20, 1997). Moreover, potential "bias for or against an attorney, who is not a party, is not enough to require disqualification unless it can also be shown that such a controversy would demonstrate bias for or against the party itself." *Edwards,* 39 F.Supp.2d at 711.

■ In a similar manner, upon the application of any party by a sufficient affidavit, 28 U.S.C. § 144 requires a judge to be disqualified when that judge "has a personal bias or prejudice" concerning the filing party. "[T]he facts [set forth in the affidavit] must be sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions or rumors are insufficient." *United States v. Sykes,* 7 F.3d 1331, 1339 (7th Cir.1993). Even in the face of an otherwise valid affidavit, as one court noted, "[A judge] must have neighbors, friends and acquaintances, business and social relations ... the ordinary results of such associations and the impressions they create in the mind of the judge are not the 'personal bias or prejudice' to which the statute refers." *Comm. of Pa. v. Int'l Union of Operating Engineers,* 388 F.Supp. 155, 159 (E.D.Pa.1974) (*quoting United States v. Gilboy,* 162 F.Supp. 384, 400 (M.D.Pa. 1958)). In accordance with this principle, it has been held that a judge's attenuated personal relations with a defendant, also a judge, was insufficient to rise to the level of "personal bias or prejudice", even where the presiding judge remarked favorably as to the merits of the defendant judge's case. *Harley v. Oliver,* 400 F.Supp. 105, 108–11 (W.D.Ark.1975).

Here, there are no allegations of specific facts to support plaintiff's contention that Mautone's representation would influence the trial judge. These conclusory and attenuated allegations of "personal bias or prejudice" by the plaintiff can not be sustained under either disqualification statute.

■ Although there appears to be a question whether the statutory disqualification standards are coterminous with the Due Process Clause of the Fifth Amendment,[6] judicial disqualification based on a

---

6. *Compare In Re International Business Machines, Corp.,* 618 F.2d 923, 932 n. 11 (2d Cir.1980) ("it would be anomalous to hold

that a claim under the [disqualification] statutes on its merits could nevertheless satisfy

generalized bias or prejudice will only be constitutionally required "in the most extreme of cases." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820–21, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) ("[o]nly in the most extreme of cases would disqualification on [the basis of a generalized bias implicate due process concerns] and be constitutionally required . . ."). Mautone's *general* relationship with the Court as a part-time magistrate judge does not create a personalized bias, as contemplated by Sections 144 or 455, nor does it rise to the level of "extreme," as required by *Aetna*. Therefore, plaintiff's Due Process claim must fail.

On a separate but related point, whether the trial judge should recuse herself is, of course, a decision for her to make alone. However, I find it difficult to accept that a litigant's unsubstantiated and hypothetical concern that a trial judge might be "subconsciously influenced" by Mautone's presence could justify recusal. *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (There is a presumption of "honesty and integrity of those serving as adjudicators"); *In re Aguinda*, 241 F.3d 194, 204 (2d Cir.2001) (It is presumed that "a judge will put personal beliefs aside and rule according to the laws as enacted, as required by his or her oath"); *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986) ("[A] judge . . . should not recuse himself on unsupported, irrational, or highly tenuous speculation").[7]

### The Juror Concern

Plaintiff's concern about jurors is readily addressed. First, statement made by lawyers are not evidence. *See Government of the Virgin Islands v. Oliver*, 360 F.2d 297, 298 (3d Cir.1966). Second, "jurors must ultimately base their judgment on the evidence presented and the rational inferences therefrom." *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978). Even assuming that a juror were to somehow learn of Mautone's status as a part-time magistrate judge, plaintiff's recourse is to ask the trial judge for an appropriate instruction, just as the trial judge will, as a matter of course, instruct the jury that statements made by attorneys are not evidence and that jurors must decide the matter before them on the basis of the evidence presented. "The purpose of jury instructions is to inform the jury on the law and to provide proper guidance and assistance in reaching its verdict." *Bucyrus–Erie Co. v. General Products Corp.*, 643 F.2d 413, 418 (6th Cir.1981). Accordingly, because "[t]he trial court enjoys considerable latitude in selecting appropriate language," carefully constructed instructions can effectively thwart the potential for bias. *Bucyrus–Erie*, 643 F.2d at 418. There is simply no reason for any prophylactic measures to be taken with regard to the jury.[8]

the constitutional standard") *with United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990) ("section 455 establishes a statutory disqualification standard more demanding than that required by the Due Process Clause").

7. In *Ferguson*, the Hawaii Supreme Court addressed "the hypothetical situation in which an attorney could be arguing bitterly against another attorney one day, only to face his opponent as judge the next." *In re Application of Ferguson, supra* 74 Haw. at 407, 846 P.2d at 900. Although the Hawaii statute in issue expressly prohibited *per diem* judges

"from practicing law before the court they serve[d]", the *Ferguson* court reconciled this prohibition with the code of conduct that required judges to "avoid even the appearance of impropriety" and concluded that "[a] per diem judge is precluded . . . from sitting on a case . . . in which her impartiality might reasonably be questioned." 74 Haw. at 407–08, 846 P.2d at 900–01.

8. The relief sought by plaintiff includes a request, in the event that this action is not transferred or Mautone is not disqualified, to advise all Court personnel that Mautone not be referred to as a magistrate judge, that he

## CONCLUSION

For the reasons set forth above, plaintiff's motion to declare unconstitutional the statutory framework pursuant to which a part-time magistrate judge may engage in the practice of law is DENIED. Likewise, plaintiff's motion to disqualify Mautone is DENIED. For these reasons, plaintiff's request to transfer this civil action to another judicial district is DISMISSED.

SO ORDERED.

not be given any "special privileges because of his judicial function," and that Mautone not use any "perks" of his judicial office during the trial.