<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000107
20-NOV-2025
08:04 AM
Dkt. 84 MO**</span>

NO. CAAP-19-0000107

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


MĀLAMA KAKANILUA, an unincorporated association,
CLARE H. APANA, and KANILOA LANI KAMAUNU,
Plaintiffs-Appellants,
v.
DIRECTOR OF THE DEPARTMENT OF PUBLIC WORKS,
COUNTY OF MAUI, and MAUI LANI PARTNERS,
a domestic partnership, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC181000122)


MEMORANDUM OPINION
(By: Nakasone, Chief Judge, Leonard and McCullen, JJ.)

This case is on remand from the Hawaiʻi Supreme Court for decision on whether the Circuit Court of the Second Circuit (**Circuit Court**) erred in granting Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(b)(6) motions to dismiss filed by Defendants-Appellees Maui Lani Partners (**MLP**) and Director of the Department of Public Works (**Director**), County of Maui (**County**).

I.   BACKGROUND

Prior to the filing of the action underlying this appeal, in Civ. No. 17-1-0311(3) (**the 2017 Case**), the appellants herein (as described below) filed an earlier action seeking, *inter alia*, to enjoin MLP from certain grading or excavation

absent compliance with Hawaii Revised Statutes (**HRS**) chapter 6E. On November 16, 2017, the Circuit Court entered a Preliminary Injunction in the 2017 Case, which enjoined MLP from further ground-disturbing activity unless notice was given to the appellants herein and MLP accommodated a supervisor designated by these appellants during the ground-disturbing activity.

On March 14, 2018, Plaintiffs-Appellants Mālama Kakanilua, Clare H. Apana (**Apana**), and Kaniloa Lani Kamaunu (**Kamaunu**) (collectively, **Appellants**) filed a complaint (**2018 Complaint**) against MLP, the Director, and the County in the proceedings below (**the 2018 Case**). Appellants alleged, *inter alia*, that Mālama Kakanilua was an unincorporated association formed to protect iwi, burials and other historic and archeologically significant sites, and Apana and Kamaunu were descendants of persons who inhabited the Hawaiian islands prior to 1778 and are cultural practitioners. MLP was allegedly mining and excavating large quantities of sand from sensitive archeological sites as part of the Phase IX project site of its Maui Lani Project. A grading permit was issued to MLP on December 5, 2014, and effective until December 8, 2017. On November 20, 2017, the County Department of Public Works (**DPW**) granted a one-year extension of MLP's grading permit, making its new expiration date December 8, 2018. The Director of DPW refused Appellants' request to rescind this extension.

Count I of the Complaint sought an injunction against the extension of MLP's grading permit. Count II sought an order in the nature of *quo warranto* and alleged that the Director had

granted the extension without good cause and in the absence of hardship, rendering the Director's action *ultra vires* and a usurpation of power belonging to the County Council.  Count III sought declaratory relief that the extension was in excess of the authority of the Director.

On April 4, 2018, the Director filed a Motion to Dismiss Complaint With Prejudice.

On April 4, 2018, MLP filed a Motion to Dismiss Complaint.

Although both motions to dismiss attached exhibits, the Circuit Court stated that it was not considering facts outside the Complaint.

On July 24, 2018, the Circuit Court entered an Order Granting Defendants' Motions to Dismiss Without Prejudice (**Order Dismissing Complaint**).  The dismissal was without prejudice so as not to impact Appellants' claims in the 2017 Case, which remained ongoing and involved overlapping factual allegations.

On October 2, 2018, the Circuit Court entered a Judgment of Dismissal Without Prejudice (**Judgment**).

On October 29, 2018, Appellants filed a Motion for Reconsideration and Relief from Judgment, pursuant to HRCP Rule 60(b).

On January 25, 2019, the Circuit Court entered an Order Denying Plaintiff's Motion for Reconsideration and Relief from Judgment (**Order Denying Reconsideration**) and an Order re Defendants' Bill of Costs (**Order re Costs**).

On February 23, 2019, Appellants filed a Notice of Appeal.

On March 15, 2024, this court issued a Summary Disposition Order affirming the Circuit Court's January 25, 2019 Order Denying Reconsideration and Order re Costs. This court did not address the Order Dismissing Complaint because Appellants filed the Notice of Appeal more than thirty days after the October 2, 2018 Judgment, and the October 29, 2018 Motion for Reconsideration and Relief from Judgment was not filed within ten days of the Judgment.

On September 30, 2025, a divided supreme court held that a motion for reconsideration filed pursuant to HRCP Rule 60(b)(6) is a "tolling motion" that extends the time to file a notice of appeal if filed by the deadline for appeal pursuant to Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 4(a)(1). The supreme court determined that "the ICA should have reached the merits of Petitioners' appeal contesting the circuit court's granting of the motion for dismissal" and vacated the ICA's April 12, 2024 Judgment on Appeal in part, and remanded for further proceedings consistent with the majority opinion.

## II. REMAINING POINT OF ERROR ON APPEAL

On remand to review the Order Dismissing Complaint, Appellants' second point of error is at issue. In this point of error, Appellants contend that the Circuit Court erred in concluding that the Director was not required to consult the State Historic Preservation Division (**SHPD**) prior to extending the grading permit to MLP.

## III. APPLICABLE STANDARD OF REVIEW

"A circuit court order granting a motion to dismiss is reviewed de novo." Civil Beat Law Ctr. for the Pub. Int., Inc.

4

v. City and Cnty. Of Honolulu, 144 Hawaiʻi 466, 474, 445 P.3d 47, 55 (2019) (citation omitted). Dismissal is not proper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the plaintiff's claim that would entitle him or her to relief. Id. The allegations of the complaint are viewed in the light most favorable to the plaintiff and deemed to be true. Id. "However, 'the court is not required to accept conclusory allegations on the legal effect of the events alleged.'" Id. (citation omitted).

IV. DISCUSSION

Appellants argue that the Director's extension of MLP's grading permit, without consulting SHPD, violated their constitutional rights under article XII, § 7 of the Hawaiʻi Constitution, which requires protection for their traditional and customary practices. Article XII, § 7 states:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

Appellants' argument is inconsistent with the allegations of the Complaint, and lacks support in Hawaiʻi case law, statutes, and administrative rules, which require consultation with SHPD prior to the grant of a permit, and notification to SHPD upon discovery of human remains and consultation with the appropriate burial council.

First, the Complaint alleged that SHPD was consulted before DPW granted the permit, and again before DPW granted the extension. According to the Complaint, by letter dated

5

November 26, 2014, SHPD accepted an architectural monitoring plan (**AMP**) prepared by MLP's consultant. On December 5, 2014, DPW approved MLP's grading permit. The Complaint also alleged that the Director contacted SHPD in July 2017, the same month Appellants filed the 2017 Case alleging violations of HRS Chapter 6E consequent to MLP's sand mining operation at the Phase IX project site. The Complaint alleges that prior to bringing the 2018 Case that underlies this appeal, Appellants requested that the Director rescind the grading permit extension.

Appellants do not cite any case, statute, or administrative rule requiring consultation with SHPD prior to granting a permit extension. Applicable statutes, administrative rules, and case law require consultation with SHPD prior to the grant of a permit or entitlement, and notification to SHPD and consultation with the appropriate burial council in the event of discovery of human remains after a project has started.

HRS § 6E-42 (Supp. 2017) states in part:

> **§ 6E-42 Review of proposed projects**. (a) Except as provided in section 6E-42.2, before any agency or officer of the State or its political subdivisions approves any project involving a permit, license, certificate, land use change, subdivision, or other entitlement for use, which may affect historic property, aviation artifacts, or a burial site, the agency or office shall advise the [Department of Land and Natural Resources (**DLNR**)] and prior to any approval allow the [DLNR] an opportunity for review and comment on the effect of the proposed project on historic properties, aviation artifacts, or burial sites, consistent with section 6E-43, including those listed in the Hawaiʻi register of historic places.

In Kaleikini v. Yoshioka, 128 Hawaiʻi 53, 72-73, 283 P.3d 60, 79-80 (2012), the supreme court recognized that HRS § 6E-8, applicable to projects commenced by "any agency or officer of the State or its political subdivisions", and HRS

6

§ 6E-42, applicable to projects requiring the approval of "any agency or officer of the State or its political subdivisions," establish a sequential review process and requires that the DLNR be given an opportunity to review and comment before approval is given for a proposed project.  To require reconsultation with SHPD before an extension would be inconsistent with this sequential process and Appellants have not cited any case, statute, or administrative rule requiring reconsultation with SHPD prior to extending a permit that was issued after SHPD already was consulted and approved an AMP.

Requiring another consultation with SHPD prior to granting a permit extension would also be inconsistent with HRS § 6E-43.6 and DLNR administrative rules, which specify the procedures to be followed in the event of discovery of burials or human remains.  HRS § 6E-43.6 (2009) states in part:

> **§ 6E-43.6  Inadvertent discovery of burial sites.**
> (a)  In the event human skeletal remains are inadvertently discovered, any activity in the immediate area that could damage the remains or the potential historic site shall cease until the requirements of subsections (b) to (d) have been met.
>
> (b)  The discovery shall be reported as soon as possible to the [DLNR], the appropriate medical examiner or coroner, and the appropriate police department. As soon as practicable, the [DLNR] shall notify the appropriate [burial] council and the office of Hawaiian affairs.

Hawaiʻi Administrative Rules (**HAR**) § 13-279-6(b) (eff. Dec. 11, 2003) states:  "If human skeletal remains are recovered during monitoring, they shall be treated as an inadvertent discovery.  Any relocation of the human remains and any associated grave goods shall follow the procedure of chapter 13-300."

Chapter 300 of HAR Title 13, Subtitle 13 "governs practice and procedure relating to the proper care and protection

7

of burial sites found in the State."  HAR § 13-300-1 (eff. Sept. 28, 1996).  HAR § 13-300-21 requires the DLNR to "establish an island burial council for Hawaiʻi, Maui/Lānaʻi, Molokai, Oʻahu, and Kauaʻi/Niʻihau to carry out all applicable duties established by sections 6E-43, 6E-43.5, and 6E-43.6, HRS, and any other applicable law."

HAR § 13-300-40 states in part:

§ 13-300-40 Inadvertent discovery of human remains. (a)  The department shall have jurisdiction over any inadvertent discovery of human skeletal remains and any burial goods over fifty years old, regardless of ethnicity.

(b)  The inadvertent discovery shall be immediately reported to the following persons:

(1)  The state historic preservation division, unless discovery occurs on Saturday, Sunday, or holiday at which time the report shall be made to the division of conservation and resource enforcement;

(2)  The medical examiner or coroner from the county in which the inadvertent discovery occurred; and

(3)  The police department of the county in which the inadvertent discovery occurred.

(c)  Once the report of an inadvertent discovery has been made, the department shall do the following:

(1)  Assure that all activity in the immediate area of the human skeletal remains ceases and that appropriate action to protect the integrity and character of the burial site from damage is undertaken;

(2)  Assure that a representative of the medical examiner or coroner's office and a qualified archaeologist determines whether the human skeletal remains are over fifty years old;

(3)  Conduct a site inspection where necessary;

(4)  Gather sufficient information, including oral tradition, by seeking individuals who may have knowledge about the families possibly connected lineally or culturally with the inadvertently discovered human skeletal remains, to help document the nature of the burial context and determine appropriate treatment;

(5)  Complete departmental inadvertent discovery forms;

> (6)  Notify the council member who represents the geographic region where the human skeletal remains were discovered, and the Office of Hawaiian Affairs;
>
> (7)  Inform the landowner or its agent of the discovery if different from the person making the report; and
>
> (8)  Determine whether to preserve in place or relocate the human skeletal remains.
>
> . . . .
>
> (e)  Where human skeletal remains are reasonably believed to be Native Hawaiian following an evaluation pursuant to section 13-300-31, the department shall determine whether to preserve in place or relocate, following consideration and application of the criteria stated in section 13-300-36 and in consultation with appropriate council members, the landowner, and any known lineal or cultural descendants.
>
> (f)  Where the human skeletal remains are reasonably believed to be non Native Hawaiian following an evaluation pursuant to section 13-300-31, the department shall determine whether to preserve in place or relocate following application of the criteria stated in section 13-300-37, and in consultation with appropriate ethnic organizations, the landowner, and any known lineal or cultural descendants.

Pursuant to HRS § 6E-43.6 and HAR § 13-300-40(b), the duty to report to SHPD is triggered by the discovery of human remains. And, while notification is to be given to SHPD, it is the appropriate burial council members who are to be consulted regarding handling of Native Hawaiian remains. HAR § 13-300-40(e).

The Complaint did not allege that human remains were discovered at the Phase IX project site prior to the Director granting the permit extension. According to the Complaint, the preliminary injunction granted in Appellants' earlier suit was based on the "potential for unmonitored grading material containing human remains being removed from the site" and three violations of the AMP that SHPD had approved prior to grant of the permit.

DLNR has procedures in place to address inadvertent discovery of human remains. Appellants did not allege a discovery of human remains, and already had their prior suit pertaining to violations of the AMP. Hawaiʻi law does not require consultation with SHPD prior to extending a permit. Rather, Hawaiʻi law recognizes a duty to consult with SHPD prior to the grant of the permit, as well as notification to the DLNR and SHPD and consultation with the appropriate burial council upon actual discovery of human remains. Accordingly, we conclude that the Circuit Court did not err in dismissing Count I of the Complaint.

Appellants further argue that Counts II and III were premised on the common allegation that no good cause existed to authorize the Director's extension of MLP's grading permit. They argue that by determining the allegations were so conclusory to warrant dismissal, the circuit court failed to construe the allegations in the light most favorable to them. An applicant's self-serving declaration that it needed to finish grading, "particularly for a period extending four years after the original approval," is not good cause and would require all extension requests be granted.

However, the Complaint did not allege that the Director lacked good cause to grant the extension. Rather, the Complaint alleges that when Appellants requested that the Director rescind the permit extension, the Director refused on the basis of "good cause, consisting of applicant's need to complete grading operations."

Regarding the extension, the Complaint alleged in Count II:

50. A grading permit application requires review by SHPD before DPW or the Director can approve the same.

51. A grading permit expires and becomes null and void one year after the date of issuance.

52. The Director has the power to grant a time extension of a grading permit in cases of hardship or for good cause.

53. Where hardship or good cause are lacking, the Director is without power to grant an extension.

54. Only the County Council has the power to permit grading, stockpiling or grubbing outside of the present framework, which it is empowered to do only by passing an ordinance.

55. The Director's granting of a permit extension in the absence of hardship or good cause is ultra vires and usurps the power of the County Council.

56. Quo warranto may be used to inquiry into what authority a person claims to exercise some government power. It is to prevent the unlawful exercise of power.

57. Plaintiffs therefore seek an order in the nature of quo warranto and for a judgment preventing the Director's usurpation.

Count III repeats these allegations and seeks a declaration that the grading permit extension is in excess of the authority of the Director.

As noted above, to defeat an HRCP Rule 12(b)(6) motion to dismiss, a complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the claim and the ground upon which it rests. Civ. Beat Law Ctr. For Pub. Int., 144 Hawaiʻi at 474, 445 P.2d at 55. "However, 'the court is not required to accept conclusory allegations on the legal effect of the events alleged.'" Id. (citation omitted).

Maui County Code § 20.08.110 states:

> Every grubbing or grading permit shall expire and become null and void one year after the date of issuance. However, the director may grant a time extension in cases of hardship or for good cause.

Although Appellants assert that extending a permit for a fourth year after original issuance raises a claim upon which relief can be granted, the Complaint made no factual allegations to dispute that grading was incomplete when the Director granted the extension, which was the basis for the Director's determination of good cause. Section 20.08.110 does not place any time limitations on the Director's ability to grant an extension, and the Complaint lacks any other factual basis for challenging the Director's discretionary determination of good cause. Therefore, the passage of time alone was insufficient to state a claim that the Director lacked good cause to grant an extension.

Appellants also failed to allege sufficient facts to support a claim in the nature of *quo warranto*. "A petition for a writ of *quo warranto* seeks a court order directing a person who claims or usurps a state office to show by what authority he or she claims the office." Application of Ferguson, 74 Haw. 394, 399, 846 P.2d 894, 897 (1993). The Complaint alleged that the Maui County Code authorized the Director to grant a permit extension. The Complaint does not allege any factual basis that the Director acted outside his authority. The Complaint also acknowledged that whether to grant an extension was within the Director's discretion. Accordingly, the Complaint fails to state

a claim that the extension of the permit was an unauthorized exercise of power.

For these reasons, we conclude that the Circuit Court did not err in entering the Order Dismissing Complaint. The Circuit Court's October 2, 2018 Judgment is affirmed.

DATED:  Honolulu, Hawaiʻi, November 20, 2025.

On the briefs:

Lance D. Collins
(Law Office of Lance D.
Collins),
for Plaintiffs-Appellants.

Kristin K. Tarnstrom,
Caleb P. Rowe,
Deputies Corporation Counsel,
County of Maui,
for Defendants-Appellees.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge